IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

ESTATE OF SHARON FREESE-PETTIBON
by CHAD O'MEALY, EXECUTOR AND PERSONAL REPRESENTATIVE
2118 JACKSON HIGHWAY
CHEHALIS, WA 98532

       CASE NO.

    PLAINTIFF

       COMPLAINT AND JURY DEMAND

    - VS. -

NEXUS RVS, LLC
C/O CLAUDE DONATI, S/A
3400 REEDY DRIVE
ELKHART, IN 46514

    DEFENDANT

---

## PRELIMINARY STATEMENT

1.    This case involves claims asserted under the Indiana Commercial Code and the Magnuson Moss Warranty Act.

2.    Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 USC 2301 et seq, invoking 28 USC 1331, and/or the amount in controversy is more than $75,000 and is between citizens of

different states, invoking 28 USC 1332.

3.   This case involves a defective 2017 Nexus Bentley motorized recreational vehicle that defendant warranted and contracted to warrant but which it was not able to repair within a reasonable number of chances or a reasonable amount of time and whose warranty and/or contract of warranty defendant breached.

4.   The vehicle which is the subject of this dispute was built and sold and warranted by Nexus Rvs, LLC, was agreed to be purchased in Indiana by Sharon Freese-Pettibon, was delivered to Sharon Freese-Pettibon in Mesa, Arizona, and was defective when acquired and had defects, problems and malfunctions when delivered to Sharon Freese-Pettibon and repeatedly thereafter, and ineffective warranty repair attempts were made upon the subject vehicle by Nexus Rvs, LLC and/or its authorized representatives and agents in Washington and California, and the place where the relationship of the parties arose is Indiana and Arizona because the warranty and other obligations of defendant were given to and received by Sharon Freese-Pettibon in Indiana and Arizona and defendant directly interacted with Sharon Freese-Pettibon in Indiana and Arizona.

## IDENTIFICATION OF PARTIES

5.  Burl Pettibon and Sharon Freese-Pettibon were each natural persons domiciled and residing in Washington and consumers and buyers within the meaning of applicable laws. They jointly purchased the subject vehicle from defendant and thereafter titled it in the state of Washington in the name of Sharon Freese-Pettibon. Burl Pettibon passed away on December 22, 2017 and his interest in the subject Rv merged with that of Sharon Freese-Pettibon. Sharon Freese-Pettibon passed away on July 6, 2018. Chad O'Mealy brings this action as the duly appointed and confirmed Executor and Personal Representative of and on behalf of the Estate of Sharon Freese-Pettibon in Lewis County, Washington, in accordance with the laws of the State of Washington.

6.  Defendant was at all times relevant a corporation authorized to do business and doing business in Indiana and elsewhere and is the manufacturer and warrantor of the subject Rv that Sharon Freese-Pettibon acquired from Defendant and has its principal place of business is in Indiana. Nexus Rvs, LLC was, at all times relevant, engaged in the business of selling and servicing recreational vehicles

through its authorized dealerships and agents that it maintains in
Elkhart, Indiana.

**FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT**

7.     The allegations of all other paragraphs and claims in this pleading
are incorporated as if fully rewritten herein.

8.     This claim is for breach of warranty and/or contract by defendant
in Indiana.

9.     Plaintiff brings this action for monetary damages and equitable
remedies because of serious and chronic defects that the subject
Rv has experienced and exhibits.

10.    The Rv is inherently defective in materials, design, and/or workmanship
and the defects appeared and arose during the term of Nexus Rvs, LLC's
warranty shortly after Sharon Freese-Pettibon took delivery of the subject
Rv, and Nexus Rvs, LLC and its authorized representatives and agents
have been unable to correct the defects after multiple repair
opportunities.

11.    As a result of the above, and the allegations below, inter alia,
defendant breached its warranty and/or contract to the injury of
Sharon Freese-Pettibon.

12.    At all times relevant, a mobile technician in Tacoma Washington,
J&L Rv Repair in Fontana California, Evergreen Truck & Diesel

Repair in Chehalis Washington, Country Canopy & Rv Center in Chehalis Washington were each a supplier and merchant and an authorized representative and agent of defendant and each of them was authorized by defendant to act for it in all respects related to warranty repair work performed or attempted on the subject vehicle.

13.     Sharon Freese-Pettibon experienced repeated problems with various aspects of the RV  including the parts which were warranted by Nexus Rvs, LLC.

14.     On or about January 18, 2017 the parties entered into a consumer transaction, in that Sharon Freese-Pettibon agreed to acquire from the Defendant, who was both the manufacturer and the selling dealer, the Defendant agreed to sell to Sharon Freese-Pettibon, under the terms of a retail instalment agreement, and defendant contracted and/or agreed to warrant the vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2017 Nexus Bentley recreational vehicle believed to bear VIN # 4UZAB 2DT 5HCJB 8304, and whose total cost was about $207,827.

15. Sharon Freese-Pettibon acquired the vehicle in reliance on the existence of a written warranty and/or contract from Defendant and on advertising representations and/or warranties of Defendant.

16. An integral part of the purchase of the Rv was the representations and advertising representations made to Sharon Freese-Pettibon and the public by Nexus Rvs, LLC.

17. Sharon Freese-Pettibon would not have purchased the subject Rv but for the representations made by Nexus Rvs, LLC to induce Sharon Freese-Pettibon into making the purchase.

18. Any limitation on the Nexus Rvs, LLC express warranty is unconscionable pursuant to applicable Law. Specifically:

   a. If made, the limitation was made in a pre-printed adhesion contract for which the term could not be negotiated;

   b. If made, the limitation and/or disclaimer was the result of legal assistance to Nexus Rvs, LLC, which they each were able to purchase because of the relative advantages they maintained over the Sharon Freese-Pettibon and Burl Pettibon;

   c. The substance of the bargain should not allow Nexus Rvs, LLC to sell a very expensive defective product and receive a large profit, while at the same time washing their hands of the product and leaving no reasonable recourse for Sharon Freese-Pettibon;

d.    If made, the disclaimers and/or limitations are each a direct result of a superior bargaining position because of their relative sophistication and knowledge and/or is a calculated and intended method designed to attempt to escape liability for producing and distributing and selling a defective Rv.

19.    Pursuant to applicable law, Sharon Freese-Pettibon received an implied warranty that the product would be fit for its ordinary purpose and/or use. Pursuant to applicable law, Sharon Freese-Pettibon received an implied warranty of merchantability. Furthermore,

a.    These implied warranties were each not disclaimed or could not be disclaimed, or

b.    In the alternative were each not properly disclaimed in that the disclaimer was not written so that a reasonable person ought to have noticed or comprehended same, specifically:

i.    It was not written in all capitals;

ii.    It was not in a different font or color; and

iii.    It was not on the face of the retail installment contract and/or warranty. or

c.    It was not conscionable pursuant to the Magnuson Moss Warranty Act and/or applicable law. Specifically:

i.    If made, the disclaimer was made so in a pre-printed

adhesion contract for which the term could not be
negotiated;

ii.    If made, the disclaimer was a result of legal assistance to
Nexus Rvs, LLC and said entity was able to purchase the
legal assistance because of its relative advantages it
maintained and maintains over the Plaintiff and Sharon
Freese-Pettibon and/or Burl Pettibon;

iii.    Moreover, the substance of the bargain is such that Nexus
Rvs, LLC should not be permitted to sell an expensive
defective produce and to receive a large profit, while at the
same time washing its hands of the product leaving no
reasonable recourse for Sharon Freese-Pettibon;

iv.    If made, the disclaimers and/or limitations are each a direct
result of a superior bargaining position because of the
relative sophistication and knowledge and/or is a calculated
and intended method designed to attempt to escape liability
for producing and distributing and selling a defective Rv.

20.    The purpose of defendant's warranty was to get the Rv fixed within
a reasonable amount of time and within a reasonable number of
attempts if a defect arose. Another purpose of the defendant's
warranty was to give Sharon Freese-Pettibon confidence in the

reliability and quality of the Rv. Another purpose of the defendant's warranty was to give Sharon Freese-Pettibon confidence in the defendant as a company.

21. After acquiring the vehicle, Sharon Freese-Pettibon discovered that it did not conform to the representations of Defendant inasmuch as it developed continuing malfunctions, defects and problems.

22. The vehicle has been in for warranty and defect repair and service multiple times for a laundry list of defects, problems and malfunctions far exceeding what a reasonable person would expect if the vehicle had been manufactured right in the first place or repaired right by defendants. The vehicle has been out of service by reason of repairs to the Rv an unreasonable number of days and a time far exceeding what a reasonable person would reasonably expect for the quality of which Defendant represented the product would be. The service work was performed under warranties from Nexus Rvs, LLC at various times and dates since purchase.

23. The defects in the Rv, which were substantial and existed in the materials and workmanship caused by defendant, included, but are not limited to, Generator Inoperative, Leveling System Inoperative, City Water Hookup Leaks, Shower Door Doesn't Close Properly, Screw in Dining Room Table Damaged, Refrigerator Doors Don't Lock and Open in

Transit, Roof Leaks, Generator Viewing Box Inoperative, Frame Not
Aligned, Satellite Inoperative, Outside Cargo Doors Misaligned and Leak,
Cargo Doors Caved In/Twisted, Water System Doesn't Work Properly,
Washer/Dryer Inoperative, Water to the Refrigerator Not Connected,
Bedroom Closet Light Inoperative, Cup Holders Not Glued Down, Radio-
CD Player Cut In and Out, Trim on Lower Back of RV Not Attached
Correctly, Passenger Side Captain Chair Turn Switch Inoperative,
Deadbolt Has Multiple Holes, Garage Can Door Sprung, Door to Outside
TV Sprung, Dining Table Comes Unlatched in Transit, Cab Heater
Inoperative, Main Heater Fan Noisy, Windshield Wiper Fluid Not
Connected, Debris Comes Out of Vents When Air is On, among other
things.

24.  Sharon Freese-Pettibon was unable to use the vehicle in the expected,
normal and customary manner because of the substantial defects and
problems and malfunctions experienced with the subject Rv and Sharon
Freese-Pettibon's loss of confidence in the reliability of the subject Rv
and loss of confidence in the ability of defendant, jointly to live up to its
warranties and/or promises and/or representations.

25.  Defendant was notified of defects and non-conformities in the vehicle and
the authorized repair facility's failed repair attempts repeatedly prior to
filing this case.

26.   In all respects, Sharon Freese-Pettibon substantially if not completely performed their obligations under the Rv's warranty from defendant and defendant did not perform its obligations, as set forth herein above and below.

27.   Because of the contract and/or warranty-covered defects, Sharon Freese-Pettibon notified defendant and/or one of its authorized servicing dealers of the numerous defects and on various dates delivered the motor coach into the possession of defendant and/or one of its authorized servicing dealers at their cost and/or expense beginning shortly after the sale.

28.   Immediately after delivery of the Rv to Sharon Freese-Pettibon and Burl Pettibon, they planned to take it on a trip and shortly thereafter began to discover defects in the new Rv.

29.   A certified mail letter was sent to defendant in February 2017 which explained the history of defects, including four holes the roof that were leaking water, and respectfully requesting that the defendant take back this Rv and replace it with a new one that has been build right.

30.   In June 2017, Sharon Freese-Pettibon sent another letter to defendant, again explaining the history of defects discovered, including shoddy manufacturing results and respectfully requesting that the defendant take back the Rv.

31.   Defendant was contacted on September 18, 2017 with Sharon Freese-

Pettibon's complaints about the Rv and/or its defects and/or repair attempts.

32. Eight photographs of defects were sent to defendant on September 25, 2017, to illustrate specific complaints Sharon Freese-Pettibon was making to defendant.

33. Defects still existed and defendant was notified of 23 defects on October 2, 2017.

34. On October 9, 2017 a list of 25 defects was sent to defendant.

35. On October 30, 2017 a problem with the Rv generator was subjected to an inspection and servicing to attempt a repair in Washington, for which Sharon Freese-Pettibon paid $51.21.

36. On November 22, 2017 problems with the Rv batteries, "landing gear," solenoid, a water leak, windshield seal, water hook up, shower door, dining table, closet light, refrigerator doors, rear trim, vent lid and more was subjected to inspection and servicing to attempt repairs in Washington, for which Sharon Freese-Pettibon paid $1,891.89 and an additional $652.19.

37. On November 28, 2017, Sharon Freese-Pettibon again sent another email to defendant, explaining repairs done and not done, defects found and improper manufacturing processes and defects discovered, and the continued roof defects and sending receipts to defendant for

reimbursement.

38.    On April 9, 2018, Sharon Freese-Pettibon again sent another email to
defendant explaining the Rv's continuing defects and malfunctions,
including the windshield, dash lights, blinds, and more.

39.    On April 10, 2018 another list of 28 defects were sent to defendant.

40.    On April 11, 2018 defendant was notified that the heater was not
working, the front door seal was leaking, a loud whistling noise occurred
at normal highway speed, water leaks, and more defects.

41.    On April 12, 2018, after a phone call with the defendant, the defendant
was again contacted about the defects in the Rv and after several emails
back and forth, Sharon Freese-Pettibon notified defendant that they
wanted defendant to take the Rv back and make repairs,

42.    The Rv was subjected to warranty-covered factory authorized and/or
warranty repair attempts to fix a leaking rook in February, April,
November 2017, in the winter and spring seasons of early 2018, in
Washington and California.

43.    The Rv was subjected to warranty-covered factory authorized and/or
warranty repair attempts to fix the leveling system in November 2017 in
Washington and in the winter and spring seasons of early 2018 in
California.

44.    The Rv was subjected to warranty-covered factory authorized and/or

warranty repair attempts in October 2017 to fix the generator in Washington and again in the winter and spring seasons of early 2018 in California.

45.    The Rv was subjected to warranty-covered factory authorized and/or warranty repair attempts in November 2017 for 4 other defects in Washington.

46.    The Rv was subjected to warranty-covered factory authorized and/or warranty repair attempts from mid January to early April 2018 for 24 other defects in California.

47.    Sharon Freese-Pettibon had numerous telephone calls with defendant for help with the Rv and during most if not all of these, Sharon Freese-Pettibon was outside of Indiana and the recipient of Sharon Freese-Pettibon's calls were defendant's authorized representatives inside Indiana.

48.    In addition to the above phone calls, a series of written letters and emails occurred between the parties.

49.    After being in the repair shop multiple times and being out of service a total of about 115 or more days in the first year and accumulating dozens of defects that were covered by defendant's warranty since its acquisition, Sharon Freese-Pettibon and Burl Pettibon notified defendant that they wanted their money back but defendant did not do that.

50.  In spite of defendant's obligations, when Sharon Freese-Pettibon
     complained of the inability of defendant and its authorized warranty-
     repair facilities and representatives to repair the vehicle, defendant did
     not repair or replace or repurchase the subject vehicle.

51.  Instead of performing as it promised and represented, defendant did not
     repair all defects in the vehicle once and for all time. In short, the defects
     were not repaired, Sharon Freese-Pettibon lost all confidence in the
     reliability and quality of the Rv, and Sharon Freese-Pettibon lost all
     confidence in defendant as a company.

52.  As a result defendant breached its express and/or implied warranties
     and/or contract.

53.  As a result, defendant's warranty and/or contract failed of its essential
     purpose and any limitations contained within the warranty and/or
     contract are null and void and Plaintiff is entitled to all applicable legal
     and equitable remedies in law.

54.  In addition, any limitations contained within the warranty and/or
     contract are null and void and without consideration and Plaintiff is
     entitled to all applicable legal and equitable remedies in law.

55.  Through its advertising and otherwise, Defendant represented that the
     recreational vehicles it built were fit for the purpose for which they were
     designed, that they are safe and suitable vehicles for their intended

designed use, reliably operable for private transportation and Sharon
Freese-Pettibon acquired the vehicle in reliance upon the belief that
Defendant possessed a high degree of manufacturing skill and judgment.

56.    Through its advertising and otherwise, Defendant represented that the
recreational vehicles which it manufactured were of merchantable
quality, fit and in proper condition for the ordinary use for which such
vehicles are designed and used, and Sharon Freese-Pettibon relied on
such, but the vehicle involved in this case was not, however, of
merchantable quality.

57.    The malfunctions and defects in the vehicle severely and substantially
impaired its use and/or safety and/or value to Sharon Freese-Pettibon.

58.    Defendant's failure to timely fix all of the vehicle's defects has caused
Sharon Freese-Pettibon to lose confidence in the reliability of the subject
motor vehicle and in the ability of defendant to repair the vehicle's
defects.

59.    Sharon Freese-Pettibon provided Defendant and/or one or more of its
authorized dealers with a reasonable number of opportunities to repair
the vehicle but they have each neglected, failed, refused or otherwise
been unable to do so within a reasonable amount of time or a reasonable
number of attempts

60.    As a result of the above facts, Defendant breached its warranties and/or

contract and/or representations with respect to the vehicle.

61.   One or more of the defects and malfunctions in the vehicle were covered under the terms of defendant's warranties and/or contract, and defendant failed to repair the vehicle, thereby diminishing the use and/or safety and/or value of the vehicle to Sharon Freese-Pettibon.

62.   Defendant and/or one or more of its authorized dealers had notices of the breaches of the warranty and/or contract and the defective condition of the subject motor vehicle within a reasonable time.

63.   Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of Defendant's authorized representatives to repair or replace the vehicle or refund its price.

**SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT**

64.   The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

65.   This claim is for breach of express and/or implied warranties and/or contract of warranties and/or defendant's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its

applicable regulations.

66.   As a result of the above, among other things, defendant has breached its obligations under the Warranty Act and/or its applicable disclosure and/or other regulations.

67.   As a result of the above, among other things, defendant breached its obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

68.   As a result of the above, inter alia, defendant is in violation of the Warranty Act.

**WHEREFORE**, judgment is demanded against defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

## PRAYER FOR RELIEF

1.   On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2.   On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above on any

appropriate claim as proven by the evidence and allowed by law, rescission and/or revocation of acceptance plus all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the Rv, and an Order finding Plaintiff to have rescinded and/or revoked acceptance, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiff demands trial by jury on all claims and issues.

/s/ Ronald L Burdge_____
RONALD L. BURDGE
Attorney for Plaintiff
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone:        937.432.9500
Fax:                   937.432.9503
Email:               Ron@RvLemonLaw.com

Z:\data\Freese-Pettibon, Sharon\Core Pleadings\Core Complaint 101218.wpd